696 So.2d 394 (1997)
Viola WATSON, Appellant,
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellee.
No. 96-2578.
District Court of Appeal of Florida, Third District.
June 11, 1997.
*395 Feinstein & Sorota and Alan M. Sorota, Miami, for appellant.
Richard A. Sherman and Rosemary B. Wilder; David R. Mankin and Michael Balducci, Ft. Lauderdale, for appellee.
Before LEVY and GODERICH, JJ., and BARKDULL, Senior Judge.
LEVY, Judge.
An injured shuttle bus passenger appeals from a final summary judgment entered in favor of her automobile insurance carrier. We reverse.
Viola Watson, (the "shuttle bus passenger"), is employed by an airline as a flight attendant and works out of Miami International Airport. Prudential Property & Casualty Insurance Company (the "carrier") is the shuttle bus passenger's automobile insurance carrier. The policy provides personal injury benefits in the event the insured is injured while riding in a motor vehicle. Miami International Airport has a parking lot for use by the employees of the airport and the airlines. A shuttle bus provides transportation between the employee parking lot and the airport terminal, provided the rider can show an employee identification badge. The general public is prohibited from parking in the employee parking lot, and cars are not allowed in the lot unless they have a special employee sticker.
On September 24, 1992, the Appellant parked her automobile in the employee parking lot and prepared to board the employee shuttle bus. When she began to step up into the bus, the doors on the bus closed on her left foot and the bus moved forward slightly. As a result, the shuttle bus passenger suffered injuries. The shuttle bus passenger's automobile insurance carrier denied her request for personal injury benefits on the grounds that the injuries caused by the shuttle bus were excluded by the terms of the policy. The policy provides coverage for injuries that occur in a "motor vehicle." However, the policy excludes vehicles "used in mass transit" from the definition of "motor vehicle."[1] The language in the policy tracks that of the Florida Motor Vehicle No-Fault Law.[2] No definition of "mass transit" is provided in the policy or the statute.
The employee sued the insurance carrier for benefits. The carrier filed a motion for summary judgment. The carrier argued in its motion that the shuttle bus was not a "motor vehicle" as defined by the policy and therefore the accident in this case was excluded *396 from those events covered by the policy. The carrier reasoned that any injury suffered by the passenger is not covered under the policy because the bus is owned by Dade County and it is used in mass transit. The passenger filed a cross motion for summary judgment. The passenger argued in her motion that any injuries incurred on the shuttle bus are covered under the policy because the bus is a "motor vehicle." The shuttle bus passenger stated that the shuttle bus is not used in "mass transit" and pointed out that the shuttle bus is used for the sole purpose of transporting airport employees who have proper identification. On August 5, 1996, the trial court granted the carrier's motion for summary judgment and denied the shuttle bus passenger's cross motion for summary judgment. Subsequently, the trial court entered final judgment in favor of the carrier. This timely appeal followed. For the following reasons, we reverse.
The terms in an insurance policy must be "given their everyday meaning and read in light of the skill and experience of ordinary people." Lindheimer v. St. Paul Fire and Marine Insur. Co., 643 So.2d 636, 638 (Fla. 3d DCA 1994) (citations omitted). Accordingly, we will recognize and apply the ordinary and plain meanings of the terms "mass transit."[3]
"In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." Brill v. Indianapolis Life Insur. Co., 784 F.2d 1511, 1513 (11th Cir.1986) (citation omitted). See Government Employees Insur. Co. v. Novak, 453 So.2d 1116 (Fla.1984)(using Webster's Third New International Dictionary to construe the term "accident" in the context of an automobile insurance policy and the Florida Motor Vehicle No-Fault Law); State Farm Fire and Cas. Co. v. Metropolitan Dade County, 639 So.2d 63 (Fla. 3d DCA 1994)(using Webster's Third New International Dictionary to define "enforcement" in home owner policies); Carter v. Peninsular Fire Insur. Co., 411 So.2d 960 (Fla. 3d DCA 1982)(using Webster's New Collegiate Dictionary to give meaning to "occasionally" and "infrequent" in an automobile insurance policy).
Similarly, turning to the instant case, mass transit is defined as something that serves "the mass of the people," and provides transportation as part of a "system of public conveyance."[4] The employee shuttle bus in this case does not serve "the mass of the people," or the public in general. The ridership of the employee shuttle bus is limited to airport workers who can present an employee identification badge. In addition, the employee shuttle bus does not transport people as part of a "system of public conveyance," but travels exclusively between the employee parking lot and the airport's terminal buildings. While the employee shuttle bus may be owned by a political subdivision of the state, it is not used in mass transit because the ridership is restricted to a particular type and number of persons and its route does not constitute one part or link of a mass transportation system. For these reasons, the employee shuttle bus in this case is not "used in mass transit" as described by the policy as well as section 627.732 of the Florida Statutes. The employee shuttle bus is a "motor vehicle" according to the terms of the policy and there is personal injury coverage under the policy.
For the foregoing reasons, we reverse the final summary judgment entered by the trial *397 court and remand with directions for the trial court to enter summary judgment in favor of the shuttle bus passenger.
NOTES
[1] The policy excludes several vehicles from the meaning of "motor vehicle," including:

(1) a vehicle owned by a municipality, transit or public school transportation authority or a political subdivision used in mass transit or public school transportation designed to transport more than five passengers;
[2] The Florida Motor Vehicle No-Fault Law provides:

The term "motor vehicle" does not include a mobile home or any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state.
§ 627.732 (1), Fla. Stat. (1995).
[3] "It is unnecessary to resort to the familiar rule that insurance policies in general, and exclusions in particular, are interpreted strictly against the carrier." Mitchel v. Cigna Property and Cas. Insur. Co., 625 So.2d 862 (Fla. 3d DCA 1993) (citation omitted). This is so because "[t]he `mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous.'" State Farm Fire and Cas. Co. v. Metropolitan Dade County, 639 So.2d 63 (Fla. 3d DCA 1994)(quoting, Jefferson Ins. Co. v. Sea World, 586 So.2d 95, 97 (Fla. 5th DCA 1991)).
[4] Webster's Third New International Dictionary provides:

mass: adj 1 a: of, relating to, designed for, serving, or characteristic of the mass of the people
transit: 1 c(1): the transportation esp. of people by means of bus, subway train, or other usu. local system of public conveyance
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1388, 2428 (1986)(emphasis added).